IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRASWELL WOOD COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-891-WKW [WO] |
| | ) | |
| WASTE AWAY GROUP, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This putative class action involves a number of complex issues, but the pending motion to dismiss (Doc. # 21) requires an examination only of whether Count II of the Second Amended Complaint (Doc. # 17) states a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961; Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants request that Plaintiff be required to provide a more definite statement of Count II, which they assert is subject to a heightened pleading standard as a fraud claim. Fed. R. Civ. P. 9(b), 12(e).

**I. JURISDICTION AND VENUE**

The court has jurisdiction over this removed case under 28 U.S.C. §§ 1331 and 1441, as the Second Amended Complaint raises a federal question. (*See* Doc. # 13.) It is no longer necessary to determine whether jurisdiction also exists under the diversity and class action removal statutes. 28 U.S.C. §§ 1332, 1453. There is no dispute as to personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In the Eleventh Circuit, it is established that a RICO claim must comply not only with the *Twombly* and *Iqbal* standards, but also with Rule 9(b)'s heightened pleading requirement for fraud claims. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). In this context, Rule 9(b) requires allegations of: "'(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud.'" *Id*. (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

## III.  FACTS

While it is unnecessary to delve into every aspect of the case in resolving the pending motion, some background is required in order to understand the basis for Count II of the

Second Amended Complaint. Plaintiff Braswell Wood Company seeks to become the representative of a class of "all persons and entities within the United States who paid fuel surcharges, environmental fees, fuel/environmental charges, landfill surcharges, and/or other similar charges to Waste Management, Inc. and/or to subsidiaries, affiliated and related entities of Waste Management, Inc." (Doc. # 17, at 5.) Within that class, Braswell also seeks certification of a "contract subclass" consisting of those who "entered into a contract with Defendant Waste Away Group, Inc." and paid the above-listed charges. (Doc. # 17, at 5.) The services provided by WM were household and commercial waste collection and disposal. Braswell was a customer of WM. (Doc. # 17, ¶ 2.)

Braswell alleges that Defendants, consisting of Waste Away Group, Inc., and other assorted subsidiaries and alter egos of Waste Management, Inc. (collectively, "WM"), concocted a fraudulent scheme to "double bill" Braswell for fuel surcharges that were supposed to have been included in the original contract price. (Doc. # 17, at 10-11.) These charges are said to have been collected pursuant to a provision in the contract allowing surcharges for "increased costs" in certain delineated circumstances, such as "changes in local, state or federal laws or regulations; imposition of taxes, fees or surcharges; the closure or heavy maintenance of roads used to provide service; and acts of God such as floods, fires, etc." (Doc. # 17, at 9 (quoting ¶ 4 of contract).) Braswell alleges that WM's surcharges had "absolutely no relationship to any fuel costs" WM incurred, but instead were increased based on changes to "national fuel indexes" alone. (Doc. # 17, at 11.) Additionally, surcharges were levied as a simple percentage of customers' bills, also without relation to WM's actual

3

costs. Further, WM knew the amounts of these surcharges in advance of the signing of contract with customers, but withheld the information until it issued actual bills. (Doc. # 17, at 11-12.) The Second Amended Complaint further alleges that Braswell improperly collected several other types of fees, described as "environmental fees, fuel/environmental charges, and landfill surcharges," which, like the fuel surcharges, were unrelated to actual costs. (Doc. # 17, at 12-13.)

Braswell argues that because invoices containing these charges were sent to customers through the U.S. mail, discussed over the phone and by fax, and paid via bank transfers, WM committed acts of mail and wire fraud sufficient to invoke the RICO statute. *See* 18 U.S.C. §§ 1341, 1343.

## IV.  DISCUSSION

A RICO claim has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "[A] pattern of racketeering activity" requires at least two acts of racketeering activity occurring within a prescribed time period. 18 U.S.C. § 1961(5). As relevant here, mail fraud and wire fraud constitute racketeering activity. § 1961(1)(B). Thus, Braswell's Second Amended Complaint must adequately allege acts constituting mail and wire fraud on the part of WM.

The thrust of WM's argument in favor of dismissal is that Braswell has recast an ordinary breach of contract claim in the language of RICO, without alleging conduct that would constitute the predicate acts of mail fraud and wire fraud. WM argues that the conduct

at the heart of the Second Amended Complaint – charging of fees other than those authorized by contract – is not "fraud" sufficient to constitute a RICO predicate. WM goes on to argue that, even if the conduct alleged could constitute a RICO predicate, neither wire fraud nor mail fraud has been pled with particularity sufficient to comply with Rule 9(b).

As might be expected, Braswell takes issue with these arguments. With respect to what is required to allege a RICO violation, Braswell devotes much of its brief to arguing that there is a distinction between statutory mail fraud and wire fraud (the alleged predicate acts) and "common law fraud," such that the former do not have as elements the existence of specific misrepresentations or reliance thereon, but only the existence of an overall fraudulent scheme. Braswell makes far too much of this theory, because it overstates the flexibility of the mail and wire fraud statutes. Mail fraud requires the existence, or intended existence, of "any scheme or artifice to defraud," coupled with use of the mails "for the purpose of executing such scheme or artifice or attempting so to do." 18 U.S.C. § 1341. The cases cited[1] by Braswell hold only that this statutory language means that the specific items sent through the mail need not themselves contain misrepresentations or inspire reliance; they

---

[1] Braswell's citation to *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257-58 (11th Cir. 2004), as support is especially odd, because that case noted specifically that a RICO plaintiff "must demonstrate that he 'relied on a misrepresentation made in furtherance of [a] fraudulent scheme,'" and that reliance cannot be presumed. (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1362 (11th Cir. 2002), *abrogated by Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008)).

*Bridge* abrogated the Eleventh Circuit's precedent, as stated in *Sikes* and *Klay*, only narrowly in deciding that a RICO claim may proceed on the basis of "third-party" reliance; that is, when a plaintiff alleges that it was harmed because a third party relied on the defendant's misrepresentations. *Id*. at 2134. *Bridge* did not hold that no reliance on anyone's part is required to sustain a RICO claim with a fraud predicate. *See id.* at 2144 ("[N]one of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations.").

need only be in furtherance of the overall fraudulent scheme which *somewhere* involves misrepresentations and reliance thereon.

Braswell avoids discussing what is required to properly plead the existence of a fraudulent scheme. It is apparent under Eleventh Circuit case law that a scheme to defraud, for purposes of the mail and wire fraud statutes, requires allegations of reliance and misrepresentation. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257-58 (11th Cir. 2004). Although the Supreme Court's recent decision in *Bridge v. Phoenix Bond & Indemnity Co.* loosened somewhat the reliance requirement, to permit claims based upon "third-party" reliance, the allegation here is not based on third-party reliance. *See* 128 S. Ct. 2131, 2144 (2008). Having found that it is necessary to plead both misrepresentation and reliance in order to prevail on a RICO claim with mail and wire fraud as predicates, the next step is to examine whether Braswell adequately pled those elements.

The word "misrepresentation," or its variants, appears several times in the Second Amended Complaint. (Doc. # 17.) One paragraph alleges that Defendants made "material misrepresentations in form invoices, contracts and letters which [were] sent to customers through the mails and wires." (Doc. # 17, ¶ 51.) The next says that "Defendants misrepresent[ed] the nature and purpose of the improper fees." (Doc. # 17, ¶ 52.) "Included in these misrepresentations and suppressions are Defendants' failure to state any of the improper fees in contracts or include them in the service rate . . . ." (Doc. # 17, ¶ 53.) Yet, "[a]ll of Defendants' misrepresentations [were] made on the invoices they send to customers

periodically . . . on letters and other notices sent to customers, and on the standardized customer agreement all customers receive." (Doc. # 17, ¶ 54.)

It is not obvious how these paragraphs of the Second Amended Complaint can be reconciled with Braswell's brief in opposition to the motion to dismiss, which argues that there is no need to show any misrepresentation in order to prevail on a RICO claim. That aside, the Second Amended Complaint is relatively clear that the alleged misrepresentations were on the documents sent through the mail. That is, in the Second Amended Complaint, Braswell did not seek to avail itself of the possibility that the mail fraud statute could be violated even if the items mailed contained no misrepresentations – instead, it explicitly alleged that the mailed invoices, contracts, and letters are where the misrepresentations appeared. An examination of the earlier factual portion of the Second Amended Complaint reveals that the misrepresentations alleged in these documents are at best those of omission; the invoices themselves simply "bill[ed] and collect[ed]" or "charged" the fees and surcharges. (Doc. # 17, ¶ 24.)

The only appearance of what could conceivably be an affirmative misrepresentation is the language quoted from the contract regarding the fees at the center of this dispute. (Doc. # 17, at 9.) But a reading of this contract language leaves the court unconvinced that any misrepresentation has been alleged. The contract permits increased charges for

> any increase in disposal, fuel or transportation costs; any change in the composition of the Waste Materials; increased costs due to the following uncontrollable circumstances: changes in local, state or federal laws or regulations; impositions of taxes, fees or surcharges; the closure or heavy

maintenance of roads used to provide service, and acts of God such as floods, fires, etc.

Braswell argues that because the fuel and landfill surcharges levied did not correspond to actual increased charges specific to each route, the entire surcharge system was a fraudulent scheme, and this language, accompanied with the invoices on which the surcharges appeared, constituted misrepresentations. But, even accepting that the charges were not in accord with the contract,[2] Braswell's definition of a "misrepresentation" is exceptionally broad. The contract provided for certain types of charges. The fact that those charges were possible via the terms of the contract cannot have been a misrepresentation in itself. Invoices received by customers reflected that those charges had been levied in various amounts. Neither was that a misrepresentation; it was entirely true that WM was levying fuel, landfill, and other surcharges in those amounts. Whether those amounts were appropriate or correct under the contract was another matter, but every incipient billing dispute is not a "misrepresentation" from the time a bill is mailed to a customer, even if the customer ultimately prevails on the merits of the dispute. If, for example, a customer had demanded an explanation of the charges, and WM had responded with false assertions about the costs of fuel it had incurred, that would be closer to a cognizable misrepresentation. But

---

[2] The meaning of the contract is not obvious, given the many ways the phrase "increase[d] . . . costs" could be interpreted. Although Braswell argues that the fuel surcharges were a complete scam and had nothing to do with fuel, it elsewhere asserts that, to be appropriate, the surcharges should have been justified by "legitimate analysis to determine the actual costs incurred or to ensure that the surcharges offset such costs." (Doc. # 17, ¶ 24.)

The contract's vagueness makes it even more difficult to understand how simply charging fees with names such as "fuel surcharge," "environmental fee," or "landfill surcharge" could constitute fraudulent misrepresentations, given that those terms, and how they should be calculated, are not specifically defined in the contract as quoted by Braswell.

to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning. Accordingly, no misrepresentation sufficient to state claims for mail fraud or wire fraud as predicate acts has been alleged.

While the failure to plead misrepresentation itself causes the RICO count to fail, there is, notably, even less showing with respect to reliance. Braswell forcefully argues that it need not allege reliance. (Doc. # 29.) The court having rejected that argument, Braswell is left in the position of not having pled any reliance with respect to the alleged misrepresentations, other than a bare assertion that "if necessary it can be established" for all the putative class action plaintiffs. (Doc. # 17, ¶ 69.) It is unnecessary to reach WM's more general arguments about specificity of pleading under Rule 9(b).[3]

Braswell asks that, in the alternative, it be permitted to replead its claims rather than suffer dismissal. While repleading might have been an appropriate option if the court had found only that fraud needed to be more specifically alleged in order to meet Rule 9(b)'s standards, repleading in this instance would likely be futile. The first Complaint in this case was filed over two years ago in state court. (Doc. # 1, Ex. A.) Braswell has had adequate opportunity to state its claims in the most plausible manner, and it is hard to see how the RICO claim here could be saved without wholesale revisions to the factual allegations in the Second Amended Complaint. For example, the court having concluded that none of the

---

[3] The court doubts the appropriateness, at this stage, of the lengthy exhibits WM submitted in support of its motion to dismiss. But because nothing in this opinion depends on those exhibits, there is no need to decide whether they should be stricken.

documents cited constitute "misrepresentations" sufficient to establish mail or wire fraud, the claim would be cognizable only if Braswell, at this late date, discovered new, previously unknown misrepresentations that would suffice.  Such a course would lack the appearance of legitimacy.  The problem with the Second Amended Complaint is not mere phraseology, but that the crux of what Braswell alleges does not state a claim under RICO.  Accordingly, leave to amend will not be granted.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to dismiss Count Two (Doc. # 21) is GRANTED, and the alternative motion for a more definite statement is DENIED as moot.  It is further ORDERED that WM's motion (Doc. # 23) to take notice of certain government documents is DENIED as moot.

DONE this 10th day of August, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE